FILED

2024 Mar-27  PM 03:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **ERIC P. HERNANDEZ,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No. 4:22-cv-1343-RDP** |
| } | |
| **MARTIN J. O'MALLEY,** } | |
| **COMMISSIONER OF SOCIAL** } | |
| **SECURITY,** } | |
| } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Eric P. Hernandez brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.     Proceedings Below

Plaintiff filed an application for disability and DIB on August 10, 2020, alleging his disability began on April 16, 2017.[1] (R. 226). Plaintiff's application was denied initially on September 23, 2020, and upon reconsideration on May 12, 2021. (*Id.*). Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") on July 29, 2021. (R. 133). The request

---

[1] Plaintiff filed a previous application for disability and DIB on December 6, 2018. (R. 46). On January 31, 2020, an order of dismissal was filed for failure to appear. (R. 94). On November 3, 2021, Plaintiff requested that his previous claim be reopened. (R. 312). Plaintiff alleged that he was out of town and did not receive notice of the hearing date. (*Id.*, R. 46). Plaintiff's request was denied. (R. 15).

was granted, and a hearing was held via video conference before ALJ Clarence Gutherie on February 8, 2022. (R. 41-59). Plaintiff, his counsel, and Vocational Expert ("VE") Sandra Bruff attended the hearing. (*Id.*).

Following the hearing, the ALJ entered a decision finding Plaintiff was not disabled under Sections 216(i) and 223(d) of the Act through December 31, 2020, the date last insured. (R. 35). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on August 22, 2022. (R.1-3). This court reviews the case pursuant to 42 U.S.C. § 405(g).

Plaintiff was 45 years old at the time of the hearing and had earned a GED through Job Corps. (R. 44, 45). Plaintiff stated that he was married, has two children, but only he and his wife reside together – with their pets. (R. 44, 263). Plaintiff previously worked as a roofer, a driver transporting railroad crews, a truck driver, and a delivery driver and shift manager for Pizza Hut. (R. 313). Plaintiff testified that his obesity, diverticulitis, anxiety, depression, bipolar disorder, high blood pressure, high cholesterol, diabetes, hepatic steatosis, gastroesophageal reflux disease, and sleep apnea all affect his ability to work. (R. 47-48). During the hearing, the ALJ said to Plaintiff, "It[ ] look[s] like your claim is mainly mental in nature, right, more than physical?" Plaintiff responded in the affirmative. (R. 48). Plaintiff testified that he has been receiving mental health treatment since 2017 from Dave Harvey ("Harvey") at Quality of Life. (*Id.*).

Plaintiff testified that, "a little over half [of each] month," he cannot get up and dress himself. (R. 50). He stated that he had not left the house for three weeks prior to the hearing. (R. 54.). Further, that during regular working hours, he sleeps for over half of the day. (R. 55). Plaintiff explained that he experiences "stomach issues . . . ten to fourteen days out of a month" and is "bloated, [with] a lot of acid reflux." (R. 48). "Probably ten to twelve to fourteen days" per month, his stomach problems cause him to go to the bathroom "six to seven times" during daylight hours

for "anywhere from twenty to twenty-five minutes." (R. 49). Plaintiff said he had been hospitalized for stomach problems "four to five" times. He has seen a specialist and takes Omeprazole over the counter. (*Id*.).

Plaintiff also testified that he "do[es]n't get along very well with other people." (R. 50-51). As Plaintiff explained, he "can't really nail down" why, but said, "I just get nervous around other people." (*Id*.). Plaintiff's wife noted on his Function Report that he "can't handle being around a lot of people" and that he "gets nervous and panics" around others. (R. 262). Plaintiff asserts that he is decent at following written instructions but cannot follow spoken instructions well, cannot work with authority figures, and has been fired from a job for not getting along with others. (R. 275-76). However, when asked by the ALJ why he cannot work by himself, Plaintiff responded, "I don't focus on the job . . . "don't finish my tasks" . . . "just easily distracted." (R. 51-52).

On April 2, 2017, Plaintiff presented to Gadsden Regional Medical Center ("GRMC") seeking treatment for abdominal pain. (R. 588). Plaintiff was admitted into the hospital by Dr. Sinha for further evaluation and treatment. (*Id*.). A CT scan showed normal results. (R. 582). A colonoscopy was also performed where two small sigmoid polyps were removed and submitted to a pathologist for review. (R. 586). The pathology report stated, "no adenomatous change or carcinoma identified." (R. 592). Plaintiff was discharged on April 8, 2017 with a diagnosis of diverticulitis of the large intestine.[2] (R. 582).

On July 4, 2017, Plaintiff was again admitted to GRMC with "[a]cute diverticulitis." (R. 567). Plaintiff was discharged with "left lower quadrant abdominal pain [and] early sigmoid diverticulitis and/or colitis." (R. 572). Plaintiff's treatment plan advised him to continue with "home medications." (R. 573). Plaintiff's medical records show a follow up appointment with a

---

[2] The medical records note Plaintiff was first diagnosed with diverticulitis on August 20, 2015. (R. 877).

gastroenterologist, Dr. Amin, on July 6, 2017. (R. 573). Dr. Amin noted, "[n]o GI plans [and to] [c]ontinue with current management." (*Id.*).

Plaintiff returned to GRMC on October 20, 2018, this time complaining of upper abdomen pain radiating to his left shoulder. (R. 561). Plaintiff was found to have "peritoneal adhesions" from his previous surgeries in 2017. (*Id.*). Plaintiff also was on antibiotics for "possible underlying diverticulitis." (R. 562). During this visit, Plaintiff's physical vitals were found to be mostly normal except for some mild tenderness in his abdomen. (R. 561).

On September 25, 2019, Plaintiff presented to the GRMC emergency room with complaints of abdominal pain radiating into his chest. (R. 547, 551). Plaintiff stated that he "had this pain for several weeks." (*Id.*). After Plaintiff was admitted, a CT scan was taken, and Dr. Jon Roden found signs of sigmoid diverticulosis but not diverticulitis. (*Id.*). A consult was ordered with Dr. Amin, but Plaintiff "[did] not want to see him." (R. 551). At this visit, Plaintiff's vitals were normal. (R. 554).

On May 31, 2020, Plaintiff went back to GRMC complaining of abdominal pain. (R. 542). The medical center again found Plaintiff's vitals normal, and his lab results and CT scan were "unremarkable." (*Id.*). Plaintiff denied vomiting, nausea, or diarrhea. (*Id.*). It was noted that Plaintiff's last bowel movement, which occurred the day before his visit to the medical center, was normal. (R. 544-45). Plaintiff was released with MiraLAX to help with constipation. (R. 545).

On July 27, 2020, Plaintiff was again seen at GRMC by Dr. John Padley with periumbilical pain that was bleeding at one point. (R. 537). Plaintiff was discharged from the medical center later that day with antibiotics and instructions to follow-up with his primary doctor. (R. 541).

Along with an April 2, 2017 diagnosis of diverticulitis, Dr. Sinha made sixteen other diagnoses — one being "[m]ajor depressive disorder" and another being diabetes. (R. 584). Dr.

Sinha, however, noted that Plaintiff's psychiatric and neurological systems were normal, specifically observing Plaintiff was "cooperative with normal mood, affect, and cognition." (*Id.*).

Plaintiff first visited Quality of Life in 2015 for treatment of diabetes and returned every few months. (R. 594-35). Until 2020, Plaintiff was consistently (1) determined not to have anxiety nor depression during these visits and (2) responded "not at all" when asked if he felt depressed. (R. 642, 678, 688). On March 28, 2017, Plaintiff responded that he found little interest or pleasure in doing things and felt bad about himself for several days out of a two-week period. (R. 636-37). On November 26, 2018, Dr. Cesar Fernandez noted that Plaintiff denied having a depressed mood. (R. 905).

On May 28, 2020 during a Quality of Life visit, Plaintiff reported that he had thoughts of suicide but did not have a plan. (R. 697). It was noted that Plaintiff was tearful and crying during his physical exam and appeared anxious. (R. 703). It was then that Plaintiff was first prescribed antidepressants, including Prozac. (R. 701). Plaintiff continued to regularly visit Quality of Life. (R. 708, 715, 731). On June 25, 2020, it was noted that Plaintiff had no psychosis but trouble maintaining employment due to irresponsibility and alcohol abuse. (R. 731).

On September 23, 2020, Dr. Robert Heilpern and Dr. Robert Estock both completed consultive examinations of Plaintiff. (R. 99, 100, 101). Dr. Heilpern could not determine Plaintiff's functional capacity because "[n]either [Plaintiff] nor [Plaintiff's] third party have cooperated in returning necessary functional information" and stated that "[w]ithout this information, the evidence is insufficient overall." (R. 99). Dr. Estock found that Plaintiff's medically determinable impairments satisfied none of the criteria listings. (R. 100). Plaintiff continued to visit Quality of Life and, on November 5, 2020, was examined by Dr. Christopher Randolph and given a GAF score of 50. (R. 772).

Dr. Virginia Bare completed a consultive evaluation on May 21, 2021. (R. 108). In her evaluation, Dr. Bare noted that Plaintiff had been diagnosed with depression but also observed that Plaintiff's thought process had logical content and was goal oriented. (*Id*.). Dr. Bare found no presence of 'A' or 'C' Criteria, but did find a moderate limitation under 'B' criteria for ability to understand and remember, interact with others, concentrate and maintain pace, and adapt or manage oneself. (R. 107-08). Dr. Bare concluded that Plaintiff's impairments related to mental health and were moderate across all domains. (R. 108).

On October 18, 2021, Dave Harvey of Quality of Life completed a mental health source statement. (R. 809). Harvey noted that Plaintiff may understand, remember, and carry out very short simple instructions. (*Id*.). He also selected "no" when asked if Plaintiff could maintain attention, perform activities within a schedule, sustain ordinary routine without supervision, adjust routine, and interact with supervisors or co-workers. (*Id*.). Harvey also noted that Plaintiff "is not able to be gainfully employed in any capacity." (*Id*.).

On January 18, 2022, Plaintiff was examined by Dr. June Nichols at Gadsden Psychology services. (R. 956). Dr. Nichols found Plaintiff's stream of consciousness to be clear and his thought process within normal limits. (R. 960). Dr. Nichols noted that, "[t]here was no evidence of delusions." (*Id.*). Plaintiff's speed of mental processing was noted as adequate, and his memory function and remote functions were described as "grossly intact." (*Id*.). In conclusion, Dr. Nichols stated, "In a 30-day period, [Plaintiff] would likely fail to report to work 25+ days in a 30-day period due to his psychological symptoms." And, "[t]hese symptoms are likely to resolve in the next 12 months." (R. 961).

Like the mental health source statement completed by Dave Harvey in October 2021, Dr. Nichols completed another one on February 4, 2022. (R. 809, 955). Similar to Harvey's statement,

Dr. Nichols noted that Plaintiff may understand, remember, and carry out very short simple instructions, as well as may understand, remember, and carry out very short simple instructions. (R. 955). He also selected "no" when asked if Plaintiff could maintain attention, perform activities within a schedule, sustain ordinary routine without supervision, adjust routine, and interact with supervisors or co-workers. (*Id.*). Dr. Nichols did note, however, that Plaintiff would be off task up to 70% of the time in an eight-hour day and would fail to report to work "25+" days out of a thirty-day period. (*Id.*).

Plaintiff continued to receive consultations from Harvey and Dr. Randolph, and on May 18, 2022, Plaintiff's GAF score was again recorded as 50. (R. 786, 788, 791, 827). Plaintiff's anxiety and depression had only improved slightly, but all other mental characteristics were described as "within normal limits." (R. 827-28).

On October 11, 2022, Harvey observed that Plaintiff had made fair progress in recovering from his anxiety and depression. (R. 823). On October 21, 2022, Plaintiff was evaluated by Dr. Randolph via telephone and found to be "irritable" with "some panics." (R. 812).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id.* § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. *Id.* § 404.1572(a). "Gainful" work activity is work done for pay or profit. *Id.* § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both criteria, then the claimant cannot claim disability. *Id.* § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments

that significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See id.* §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. *Id*. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is found to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id.* § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. *Id.* § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c).

Here, the ALJ first concluded that Plaintiff's previous claim was not due to be re-opened based on a finding of no evidence to support this position. The ALJ held the prior determination to be "final and binding." (R. 15). For Plaintiff's second disability claim, the ALJ found Plaintiff met the insured status requirements of the Act on December 31, 2020. (R. 18). At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity as required by the Act. (R.

18). At step two, the ALJ determined that Plaintiff had severe impairments of obesity, gastritis, diverticulitis status post colectomy, anxiety disorder, depression, and bipolar disorder. (R. 19). The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments contained within the Act. (*Id.*). The ALJ determined that Plaintiff has a moderate limitation in understanding, remembering, or applying information. (*Id.*). The ALJ found Plaintiff to have a marked limitation in interacting with others, but only a moderate limitation in concentrating, persisting, or maintaining pace. (R. 21). The ALJ also found Plaintiff to only have a moderate limitation in adapting or managing himself. (*Id.*).

At step three, the ALJ looked to the listed impairments and determined that because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the paragraph B criteria were not met. (R. 22). The ALJ then moved to consider paragraph C criteria and found the evidence failed to establish the presence of the necessary criteria. (R. 22-23). In doing so, the ALJ found Plaintiff did not have marked limitations in a broad area of functioning, nor did he have an extreme limitation in a broad area of functioning. (R. 19).

The ALJ then considered step four, Plaintiff's Residual Functional Capacity ("RFC"). (R. 23). The VE characterized Plaintiff's past work as medium work and testified there are jobs in the national economy that a person with Plaintiff's limitations could perform – three of those being a floor cleaner, a janitor, and a bus detailer. (R. 56). The VE stated that an individual of Plaintiff's age, education, and work history that could only maintain concentration for two hours would be unable to perform any work in the national economy. (R. 57). But, the VE further testified that a hypothetical person who could not interact with co-workers or supervisors would be unable to perform any work in the national economy. (R. 56-57). The VE opined that to perform the medium

work she identified, an individual would only be allowed one absence each month and could only be off-task for 10% of the time. (R. 56).

The ALJ determined Plaintiff to have an RFC for medium work except he can never climb ladders, ropes, scaffolds, or be exposed to workplace hazards. (*Id*.). The ALJ further determined Plaintiff would be limited to performing detailed but uninvolved tasks without a high production rate pace; has the ability to make simple work-related decisions; can tolerate occasional changes in work setting; and can work alone, which is defined as no interaction with the public; can have limited interaction with co-workers and supervisors; cannot perform tandem tasks; and must have five percent off-task time in addition to any regular breaks. (*Id*.). The ALJ found that Plaintiff was unable to perform any past relevant work based on a review of the evidence and a comparison of the physical demands of Plaintiff's past relevant work to the RFC. (R. 33). Concurring with the testimony of the VE, the ALJ found that Plaintiff cannot perform past relevant work, either as actually or generally performed. (*Id*.).

At the fifth and final step, the ALJ found that through the date last insured, considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy during the alleged period of disability. (R. 34). In making these findings, the ALJ ultimately concluded Plaintiff was "not under a disability within the meaning of the Social Security Act from January 19, 2019, through the date last insured." (R. 16, 34).

This appeal followed that determination.

## III.   Plaintiff's Argument for Remand or Reversal

Plaintiff makes four arguments for reversal: (1) the ALJ erred in his treatment of the medical opinions (Doc. #14 at 23); (2) the ALJ's evaluation of Plaintiff's subjective symptoms is

not supported by substantial evidence (*Id*. at 33); (3) the ALJ erred in the application of SSR 18-3p (*Id*. at 36); and (4) there is good cause for Plaintiff's failure to appear at his previous hearing and there is good cause for a late appeal of the previous decision (*Id*. at 37).

## IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine whether the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "(i)t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.    Discussion**

Plaintiff alleges (1) that the ALJ erred in the treatment of the medical opinions by not providing an articulate assessment of the "supportability" and "consistency" of the medical opinions, (2) there is no substantial evidence to support the ALJ's evaluations of Plaintiff's subjective symptoms, (3) that the ALJ erred in applying SSR 18-3p, and (4) there is good cause for Plaintiff's failure to appear at the previous hearing and good cause for a late appeal of the previous hearing. (Doc. #14 at 23, 33, 36, 37). The court addresses these arguments below.

**A.    The ALJ Did Not Err in its Treatment of the Opinions of Dr. Estock, Dr. Bare, Dr. Nichols, or Dave Harvey.**

Plaintiff argues that the ALJ did not provide an "articulate assessment of the 'supportability' and 'consistency' of the medical opinions," and further argues, "to the extent articulated, the ALJ's reasons for dismissing … the medical opinions is not supported by substantial evidence." (Doc. #14 at 23, 25).

The court's review of the ALJ's decision is limited to whether his decision is supported by substantial evidence and whether the correct legal standards were applied. *E.g.*, *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). When an ALJ articulates their evaluation of the medical record in an opinion, the ALJ is required to "articulate … how persuasive" they find all of the medical opinions. 20 C.F.R. § 416.920c (b). In explaining how they determined the persuasiveness of the medical opinion, an ALJ must "explain how [they] considered the supportability and consistency factors for a [medical opinion]." 20 C.F.R. § 416.920c (b)(2).

**i.    The ALJ Properly Considered Dr. Estock's Opinion.**

As the ALJ indicated, while Dr. Estock recited Plaintiff's impairments and found his depression and anxiety severe, he did not provide a statement regarding Plaintiff's functional

abilities because there was insufficient evidence to do so. (R. 29, 96-102). Dr. Estock simply did not provide any opinion or prior administrative medical finding that the ALJ was required to evaluate under the regulations, 20 C.F.R. § 404.1513, and the ALJ was only required to evaluate this non-opinion evidence from Dr. Estock in assessing Plaintiff's RFC. *See* 20 C.F.R. § 404.1545(a)(3) (RFC is based on all of the relevant medical and other evidence). The ALJ properly reviewed the evidence from Dr. Estock and noted that the record evidence at the time of Dr. Estock's review supported his findings that Plaintiff had severe mental impairments; however, that evidence was insufficient to assess any functional limitations. (R. 29, 100-01).

But, the ALJ evaluated Dr. Estock's opinion findings regarding Plaintiff's mental impairments, and specifically addressed the supportability and consistency of those findings. (R. 29). The ALJ found them "moderately persuasive," despite the concern they did not speak to "what [Plaintiff] can still do despite [his] impairments … or limitations." (R. 29); 20 C.F.R. § 404.1513(a)(2).

Plaintiff complains that the ALJ incorrectly indicated that he had not reported mental health symptoms prior to May 2020. But, the record evidence he cites actually supports the ALJ's observation. Specifically, in March 2017 -- although Plaintiff expressed that he had little interest and gained little pleasure in doing things -- denied feeling down, depressed, or hopeless. (R. 642-43). And, his psychiatric evaluation was normal. (*Id.*). Further, in April 2017, while secondary diagnoses of major depressive disorder and anxiety disorder were listed during his hospitalization for diverticulitis, the records do not document any psychological complaints, and the psychiatric examination was normal. (R. 581-84). And again, in November 2018, although mild major depressive disorder and generalized anxiety disorder were listed as diagnoses, Plaintiff denied any

psychiatric symptoms, and his examination was normal.[3] (R. 904-06). Plaintiff's remaining arguments lack merit. (*See* Doc. 18 at 13-14).

### ii.    The ALJ Properly Considered Dr. Bare's Opinion.

Turning to Dr. Bare's findings, the ALJ discussed their supportability and consistency at length (R. 30-31), and, in doing so, discussed an extensive amount of evidence. (*Id.*). The ALJ (1) concluded that Dr. Bare's findings were mostly persuasive, but (2) explained why particular administrative findings (and portions of those) were not wholly persuasive, and (3) addressed limitations "not phrased in vocationally relevant terms." (R. 30).

The ALJ looked to "all available evidence in [Plaintiff's] file" to determine his RFC. (R. 31). The ALJ recognized Dr. Bare's examination findings that showed Plaintiff "had logical thought process, no hallucinations, and normal perception" in determining his RFC. (R. 300). The ALJ, "giv[ing Plaintiff] the benefit of the doubt," found that he had a marked limitation in interacting with others and a moderate limitation in three broad areas of mental functioning. (R. 30). Yet, Dr. Bare's opinion only found moderate limitations across all four areas. (*Id.*). As a result, substantial evidence supports the ALJ's finding that Dr. Bare's opinion is inconsistent with the record as a whole.

### iii.   The ALJ Properly Considered Dave Harvey's and Dr. Nichol's Opinions.

Plaintiff argues the ALJ erred in considering Dave Harvey's and Dr. Nichols opinions together; however, he fails to cite any case law or regulation supporting that contention. (Doc. #14 at 29-30). Plaintiff points to a regulation indicating that an ALJ is not required to consider multiple opinions from a single source separately; however, he has not presented any authority holding that

---

[3] Further, the examinations Plaintiff cites are dated prior to the beginning of the relevant period the ALJ considered, which began January 19, 2019. (R. 15).

an ALJ may not consider two opinions together, especially when (as here) the opinions express almost identical findings and are contained in identical forms. (R. 809, 955). Of course, the key question this court must address is whether substantial evidence supports the ALJ's evaluation of the opinions.

The ALJ properly evaluated the opinions of Harvey and Dr. Nichols for "supportability" and "consistency," as required by the regulations. *See* 20 C.F.R. § 404.1520c. The ALJ first addressed the findings of each opinion. (*See* R. 31). The ALJ found the opinions were not supported by Plaintiff's treatment records. (R. 31). The ALJ also looked at the findings of Harvey and Dr. Nichols by comparing them to the record as a whole. (*Id.*).

As the ALJ noted, Plaintiff "had logical thought process, no hallucinations, and normal perception." (*Id.*). These findings are supported by substantial evidence in the record. (*See* R. 20, 22, 25, 27, 29, 30, 31) (citing Exs. B3F, B5F, B6F, B8F, B17F, B18F). The ALJ even looked beyond the date last insured and found there was no "deterioration in [Plaintiff's] conditions." (R. 31). The ALJ expounded upon his findings by specifically identifying factors from Dr. Nichols's opinion. (*Id.*). Although the ALJ considered the findings contained within Dr. Nichol's opinion, he also noted that Plaintiff had "good eye contact, clear and normal speech, clear stream of consciousness, normal orientation and thought process with no evidence of confusion, loose associations, tangentiality, flight of ideas." (*Id.*). The ALJ also found that Plaintiff had "good insight and judgment, adequate speed of mental processing, … grossly intact memory functions, abstract thinking, and average range estimated intellectual ability." (*Id.*). Thus, the ALJ relied on substantial evidence from the record in addressing the "supportability" of Harvey and Dr. Nichols's opinions.

The ALJ then separately addressed the "consistency" of Harvey and Dr. Nichols's opinions. (*See* R. 31). The ALJ found the opinions to be inconsistent with the treatment records and specifically noted that the findings of Plaintiff's primary physicians showed a normal orientation. (R. 31-32, 611, 642, 905, 678, 688). The ALJ further found the opinions inconsistent with the record as there is no evidence of treatment or reports of symptoms (other than one occasion in March 2017 when it was reported Plaintiff had little interest in activities). (R. 31-32). The ALJ also correctly stated that the finding by the Harvey opinion that Plaintiff cannot be gainfully employed is a finding reserved solely for the Commissioner. (*Id.*); *see* 20 C.F.R. § 404.1520b(c).

Counsel for Plaintiff claims the ALJ "picked and chose instances where [Plaintiff] had some normal psychiatric findings." (Doc. #14 at 30). To be clear, an ALJ may not "pick and choose." But, this court cannot find any instance when the ALJ did so here. (R. 15-34). In fact, it is Plaintiff who is "picking and choosing" findings that favor his case. (*See* Doc. #14 at 30-32). The ALJ looked to a limited number of findings made indicating that Plaintiff was reported to have abnormal psychiatric findings, and contrasted those with a number of instances where Plaintiff was found to have been within normal psychiatric measures. (*See* R. 31). In doing so, the ALJ viewed the record evidence as a whole. *See* 20 C.F.R. § 416.920c (a).

This court concludes the ALJ's assessments of Dr. Estock, Dr. Bare, Dave Harvey, and Dr. Nichols's opinions are supported by substantial evidence. *See Martin*, 894 F.2d at 1529.

**B.    Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Subjective Symptoms Reports.**

The ALJ properly considered Plaintiff's reports regarding his subjective symptoms by consulting other evidence along with the medical evidence. Substantial evidence supports the ALJ's finding that Plaintiff's alleged intensity and persistence of symptoms is not consistent with

the record as a whole. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms alleged by Plaintiff; however, he determined that the intensity and limiting effects were inconsistent with evidence in the record. (R. 24, 32).

The ALJ looked to statements made by Plaintiff himself in assessing the intensity and persistence of his mental and physical impairments. (R. 24). For example, the ALJ found that, as Plaintiff reported, "[he] is able to follow written instructions, manage his personal care without problems, prepare simple meals using a microwave, clean inside the house, ride in a car, leave the home, count change, watch sports, use a phone to text, shop at Walmart, and go places without needing reminders." (*Id.*) (citing Ex. B7E). The ALJ further found that Plaintiff's allegations were contradicted by "examination findings show[ing] [Plaintiff] had normal perception, thought content, cognition, insight, and judgment." (R. 26) (citing Exs. B6F and 8F). The ALJ concluded that "the objective medical evidence does not fully support [Plaintiff's] allegations of disabling symptoms." (*Id.*).

Plaintiff asks this court to consider a one-off secondary diagnosis of depression as evidence that his mental health symptoms have persisted since 2017. At the same time, Plaintiff's position is wholly inconsistent with the fact that he sought no treatment and, in fact, denied the very existence of depression–until May 2020. (R. 611, 642, 905, 678, 688). Here, the ALJ, looking to the entire record, found that Plaintiff did not seek treatment for his mental impairments until May 2020. (R. 26). Those findings are supported by substantial evidence.

### C.    The ALJ Did Not Err With Respect to SSR 18-3p.

Plaintiff argues that the ALJ erred in the application of SSR 18-3p when (1) he conflated a treatment note of medication non-compliance related to blood pressure and diabetes medication into one related to mental health related medication, and (2) relied on an erroneous finding that

there had not been a psychiatric diagnosis before mid-2020 when in fact he had depression and anxiety diagnoses in 2017 and 2018. (R. 33).

An ALJ need only consider alternate reasons for failing to comply with prescribed treatment when the claim is denied solely for failure to comply with prescribed treatment. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (finding where "an ALJ relies on noncompliance as the sole ground for denial of disability benefits … the ALJ is required to determine whether the claimant was able to afford the prescribed treatment."). Plaintiff is correct to point out that the ALJ mentions the failure to comply with a prescribed treatment plan. (Docs. #14 at 36-67; #19 at 4-6). But here, Plaintiff's noncompliance was not the sole ground for the denial of benefits, as Plaintiff would have this court believe. (Doc. # 19 at 4-6).

The ALJ was not required to determine whether Plaintiff could afford the prescribed treatment. Plaintiff offered no testimony that he could not afford his treatment and provided no evidence that he applied for free or subsidized medication despite his financial constraints, nor has he demonstrated why he failed to so do. *See* SSR 18-3p; *Allen v. Schweiker*, 645 F.2d 799 (5th Cir. 1981). The ALJ relied on the evidence submitted by Plaintiff and the record, as a whole, to determine that he was ineligible. (*See* R. 24-27). The court finds the ALJ complied with SSR 18-3p.

### D.    The ALJ Properly Denied Plaintiff's Request to Re-Open His Previous Hearing.

Plaintiff next argues there is good cause for his failure to appear at the hearing held in January 2020, and there is good cause for his late appeal. Plaintiff contends that his failure to appear was because he did not receive notice of the hearing until after the hearing, and he was out of town during the hearing. (Doc. #14 at 38). A notice of the hearing was mailed to Plaintiff in October 2019, which he signed and returned. (R. 94). The ALJ found "no evidence that would

support reopening the prior determination" and Plaintiff's request to reopen was "denied as final and binding." (R. 15).

Under 20 C.F.R. § 404.900(a), federal court review is appropriate only when a party has completed the steps of (1) an initial review, (2) a reconsideration, (3) a hearing before an ALJ, and (4) an appeals council review. Following that process, the Administration will issue its "final decision" and a claimant may seek review with a federal court. *See* 20 C.F.R. § 404.900(a)(5).

Plaintiff has failed to complete the entire administrative review process regarding his prior claim. As the ALJ noted in his Order of Dismissal, the initial determination dated January 18, 2019, remained in effect.[4] (R. 95). Thus, Plaintiff failed to exhaust his remedies before the Commissioner regarding his prior claim, and this court lacks jurisdiction to revisit the claim. *See* 20 C.F.R. § 404.900(a).

Plaintiff requested the ALJ to reopen the prior decision. (R. 312). The ALJ reviewed the request and determined that there was no basis for reopening. (R. 15). As discussed above, the ALJ correctly found that Plaintiff was not disabled and thus reopening would be futile. Additionally, the Social Security Act does not provide for review of the Commissioner's denial of a request to reopen. *See* 42 U.S.C. § 405(g); *Sherrod v. Chater*, 74 F.3d 243, 245 (11th Cir. 1996). Therefore, this court lacks subject matter jurisdiction to review a decision by the Commissioner not to reopen a prior administrative decision under the Social Security Act, absent some colorable constitutional challenge. *See Califano v. Sanders*, 430 U.S. 99, 107-09 (1977); *Sherrod*, 74 F.3d at 245. However, Plaintiff is not without remedy. He may submit a written request for reconsideration to the

---

[4] Contrary to Plaintiff's argument, the record -- including the ALJ's Notice of Dismissal -- indicates Plaintiff had received notice of his initial hearing, as he signed and returned the enclosed Acknowledgment of Receipt (Notice of Hearing) (R. 94).

appropriate authority within the Administration laying out his argument for good cause as explained in 20 C.F.R. § 404.909(b).

## VI.      Conclusion

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this March 27, 2024.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE